I submitted some additional citations. I don't know if the court received it. I filed it last night. It's actually, I'm still citing to authority, but within that authority, these other cases were cited. And so that's why I included that. And my esteemed colleague has given me a couple of cases, and he allowed me to at least read one of them before I went forward. But this case presents several errors that we'd like the court to review. And it also comes, it raises the whole issue of fairness, and fairness in a trial as far as the right to counsel and other constitutional rights. Counsel, I've got to be candid with you on this. I have never in my life seen so many claims of error in a matter that at least was tried as a very minor offense. I mean, this is like a death penalty case. I mean, there are multiple, multiple claims of error, some seemingly of more weight than the others. And I'm not going to go into all of them. I'm just going to say a couple of them, and then we can spend all day here on your arguments. Do you want to focus on maybe the one, maybe two, that you think are most pressing? I will, Your Honor. And I do agree that I did raise several issues. And I think my reply brief, I think, actually focuses the issues a little bit better than when I originally filed the opening brief. And the court, the trial court, and even Your Honor has mentioned that this was tried as a relatively simple case. But the trouble is, is that the government charged this as first as a felony. Then they realized that because of the statute, they couldn't charge it as a felony. And that was an indictment. And it was brought up actually at the arraignment that the statute did not allow for a felony. Finally, several years later, they finally charged it as a misdemeanor with a superseding indictment. The case is proceeding forward. And the reason why this case was delayed so long is because it was originally a state case that the federal government adopted. And Mr. Vivia, and there was also an amicus brief filed about items that were seized that still have not been returned. And even to this day, Mr. Vivia still does not have many of the items that were taken from his home. Mr. Vivia worked out of his home. And his defense was an alibi defense. And so when they come and take your file... Did Mr. Vivia also work for or at the law firm from which many of these emails were sent? Yes, Mr. Vivia did have some... And wasn't this ultimately tried as a petty offense? I think that that's Judge Smith's point. Your Honor, that's not the issue, though, of what it was tried. It was whether at the time of June the 20th, when the government stood up before the Court and said, we're thinking about trying this as a petty offense, that's when this case went off the rails. Ultimately, when the trial court looked back on that moment, which the trial court on that day ordered the government to file something with the defendant and with the Court saying, in other words, let us know what you're going to be doing. They sent a letter to Mr. Vivia, which is in the record, and it's really more... It's not a very straightforward, this is what we're going to do, we're going petty offense now. It's more of an offer. But the government never went to the district court, as was ordered, and said, we're proceeding with a petty offense. Counsel, correct me if I'm wrong on this, but I thought that the district court at one point said, the government has said this would be a petty offense, and I'm going to hold them to that, and that that's how this will proceed. I thought that's on the record. You are correct, Your Honor, and I said never. But that was on June the 22nd at the time. Let me restate that. There were several... I've got it in my reply brief. It's on page 22. There's four particular hearings where this issue comes up, and it is on January the 22nd is when the court says they're going to hold them to it, because the government continued in all of their filings that this was a B-1 offense. In fact, one of the reasons why we're here, and why we need the court to decide, is the government continues to assert that that is only a sentencing enhancement, that B-1. So, Your Honor, you are correct that the judge did say that. He was going to hold them to it. And then that leads to the issue of the oral pronouncement, because he did say B-1. I don't want to waste the court's time or argue too much about that at this point. I think that we're dealing with a situation where he had... Mr. Vivia had a constitutional right to trial counsel. Even the government admits that that was error for the judge to not provide him with trial counsel. During the critical period... Counsel, I apologize for interrupting, but I thought the trial court made a specific finding that he was sufficiently in command of resources that he was not entitled to have counsel appointed further. So he couldn't get counsel on the government's time, but I didn't think the court ever stopped him from bringing his own counsel in. Your Honor, when a defendant cannot find counsel, when he's unable to find counsel... Let's assume this. Let's say Bill Gates, one of my Seattle colleagues here, can afford a lawyer, but is being tried for something and tells the court, you know, I just can't find a lawyer. Is he being deprived of counsel? He doesn't have a right to appointed counsel. You know, well, why is it just Mr. Vivia's problem to get counsel to represent him if he can't... if he's not indigent? Did Mr. Gates say he wanted a counsel? Let's say he says he wants a counsel, but he can't find one. Are the facts of the case such that the community, the legal community, may not want to represent this case potentially? You know, I was just trying to give you a hypothetical to help you in your argument, because you've got to persuade this panel that somebody who is not indigent has a right to appointed counsel. I guess that's what you're arguing. Didn't he have counsel? I don't really... I'm just not understanding the argument that he's deprived of counsel when the judge doesn't stop him. From bringing counsel in. You know, if a judge says, your lawyer can't get inside my courtroom, that's a deprivation of counsel. But I didn't see on the record here how the judge deprived him of counsel. Mr. Vivia had informed the court that he did not want to represent himself and that he had sought counsel but was unable to find counsel. Didn't he have counsel early on and counsel withdrew? Yes, Your Honor. There were... There were multiple counsels who withdrew, weren't there? Your Honor, may I address that? Yes, after you answer my question. There were two counsels that represented... Actually, there were three counsels ultimately, the third counsel. And the issue about the inventory was a driving... was a wedge that was driven between his counsels. I believe if you look at the record and especially the documents he filed after, he no longer had counsel. And Mr. Vivia wanted to have access to his... to those items that were seized by the government and that he did not have access to. Didn't Mr. Vivia file a number of pleadings while he had counsel without counsel's knowledge? Wasn't that the basis for one of the counsel's withdrawals? The last counsel withdrew when Mr. Vivia filed. The last counsel said, I'm ready to go. They set the trial to go. Mr. Vivia tried to speak before the judge, and the judge would not allow him to speak about that. So Mr. Vivia sought relief in this Court. This Court denied that relief. And when he returned to the trial court, the Court did address or at least speak to Mr. Vivia about it. This is not a circumstance where he was either indigent, as Judge Gould pointed out, or he never had counsel. He had counsel. He proved to be a difficult client. Your Honor... ...court appointed counsel on the government's dime for a petty offense. That's the scenario under which you would like us to find a right to counsel? No, Your Honor. There's more to it than that. That's the government's position. That is not the defendant's position. The defendant's position... Was my question right with factual inaccuracies? Yes, this Court needs to decide whether Mr. Vivia was, whether the government had properly filed and proceeded with a petty offense. That's what I dispute. That's what I'm disagreeing with the Court there. It's not this Court has to decide that first. Well, that doesn't really have anything to do with the counsel issue, does it? As a matter of fact, before we even get to the points you're raising, don't you have to show that this was at a critical stage? Yes, Your Honor. Pre-trial... Where is the evidence that between the second and the third counsel, when your client filed a series of motions himself, while he was waiting to get new counsel, why was that at a critical stage? Because the proceeding had been going on for four years prior to that time, and he was represented during that entire period. Nothing new was raised during this period, was it? Oh, yes. A witness died. Mr. Vivia sought to depose a witness, Mr. Miller. Resurrected. Is that what the motion was? No, Your Honor. Mr. Vivia sought to have Mr. Miller deposed because of his health. Right. And Mr. Miller ultimately died during this period. Mr. Vivia was unable to convince the Court that he should be deposed. Is there any evidence that was proper that had the Court granted that motion that he would have been able to take the deposition? If he was really sick, he might not have been able to take his deposition anyway. I don't think that was an issue, and I don't think that it was raised that he was too sick to be deposed. Wouldn't that be your burden, though, to bring that forward, if you're going to rely upon that? I mean, if the man is sick enough, he's dying in this three-month period, presumably there would have been some evidence before that time that regardless of the subpoena and regardless of whether you have the subpoena, you could go in and ask the Court to compel the discovery, then presumably this gentleman's lawyer would say, my client's almost dying, and you're not going to let him take the deposition anyway, is he? I don't – there's got to be arrangements made for the government to be present for them to have the proceeding in the hospital. I think that the issue wasn't his health. There was – I'd like to return, if I may, to the counsel issue. Okay. My main point here, though, is that before you get to the counsel issue, you've got to show that this was a critical stage of the proceeding, or we never get to the counsel issue, do we? The judge said there were going to be no further continuances. That's a separate issue, isn't it? It's about a critical stage. We're pre-trial. That's later on. That occurred when it was time for the trial, isn't that correct? No, that's around September, if I'm not mistaken. That's before trial counsel was relieved. The judge had set the January – in other words, that September, we're going to trial in January. That's the judge's position. Right. Trial counsel's relieved. He's proceeding. It's a critical stage because you've got to subpoena your witnesses. You're going to trial. You've got – whether it's a petty offense or what offense, a critical stage because you've got to line your witnesses up, you've got to line your documents you want to have present. You need to make sure you've reviewed all the government's evidence and be able to present your – Was Mr. Viviev deprived of any of that? During this period of time, the government – I mean, ultimately, did he have all that he needed to go to trial? I don't think that's true, Your Honor. He still hasn't received all of his documents that were taken from his house where he worked, which could also have provided him additional alibi evidence because he worked at his home. He did work for the Boyle Company. They were one of his clients. He also worked for the court. So in preparation, that makes it a critical stage as you're trying to get ready to defend yourself. And so in this same timeframe, he's negotiating with the government about access to this information. They have a hearing. The government says, we have given him access to all of the items that we have. He can go to the state if he wants access to the other items. And he asks the court, court, please help me. And the court says, I don't have jurisdiction. And so – If he had had counsel, would that have conferred jurisdiction upon the court? I don't know if it would. I would ask the court to make a ruling that the district – this is the Federal Court. The Fourth Amendment was used to seize those items. The government is using the same investigator, the State, to prepare the case, to present the case, and to then allow a whole section of documents and evidence to be left aside and only cherry-pick those that they want to use. But those were his documents. Is that right? Some of his – there was also some – Those were documents taken from his home, correct? That's true. So those were documents of which he had knowledge, correct? He had knowledge, supposedly, yes. And he would have had knowledge of the substance of those documents. So it's not like government sideswiped him or ambushed him, because those were his documents. But his sideswiping and ambushing – what we're talking about is for the Federal Court to provide a forum for a person who has had his items seized, and even though it's the State that seized them, Mr. Vivio was told to go back to the State. He went to the State. He was not provided any relief in the State. He came back to the Federal Court. And so the Federal Court should provide a forum, especially when the Federal Government is before them trying a criminal case. There should be a forum to be able to have your property returned. If they're not going to – You argue that this is a part of the critical stage of the proceedings. I'm sorry, Your Honor. Are you arguing that this is a critical stage, hence his right to counsel was violated? I am saying that during the – before – yes, Your Honor. It was a critical stage. Do you want to save any rebuttal time? It's up to you. I do, Your Honor. We've got just a little under three minutes left. Judge Smith, let me ask counsel one question about the record. I know that one of the conditions of probation was that your client pay a preexisting debt, I guess to the lawyers who'd represented him earlier. There was some prior order on that, and then that was imposed as a condition of probation, which raises some issues under the Lorenzini case. So my question is, does the record show whether the debts to the other counsel were ever paid by your client? I'm not sure if they have. I'm not sure if the record reflects that, but my understanding is they have. Okay. Thank you. Good morning, Your Honors. May it please the Court, Assistant United States Attorney Mark McKeon for the United States. I'd like to jump right to the issue that you may judge on the 14th, Ground for Appeal, the conditions of probation. In this case, I think that that issue is now moot, because the defendant was sentenced to a three-year term of probation that was in, I believe it was in January of 2008. So that three-year term has now expired. There is a case, it's I think a 2255 case, not a direct appeal, Cervantes, C-E-R-V-A-N-T-E-S v. Walker, 589 Fed Second 424, a Ninth Circuit case from 1978, a similar case where the probation had expired shortly before oral argument, and therefore the court held the challenges to the probation conditions were moot. What's that cite again, please? That is 589 Fed Second 424, Ninth Circuit, 1978. There is, of course, exceptions to mootness if an issue is capable of repetition and evading review, but in that case the court said that capable of repetition meant as to this defendant. And evading review, they said that a three-year term of probation was sufficient for this to be normally litigated, and therefore it wasn't an issue that was likely to be repeated as to this defendant. I think my questions have been answered adequately on the Lorenzini issue. All right. Your Honor, I'm actually not sure where to begin because there are so many issues. So I'd like to ---- Why don't you begin with the right to counsel issue since Mr. Page spent a considerable amount of his time on that. Sure. First thing, Your Honor, is I think the court needs to realize that we're not talking about a three-month period. We're talking about a 28-day period, because although his counsel withdrew in October, until the end of December, he was telling the court, I am looking for an attorney, I want to find an attorney, and I'm going to do that, and didn't ask the court to appoint him counsel. So nothing happened. It wasn't until December when he came forward and asked the court at that point to appoint him attorney, but at the same time, he told the court that, number one, he had found an attorney, and but that he didn't want to or he represented that he couldn't pay the retainer, but he put forward no financial affidavits, no financial documents, nothing that the court could make a finding that he couldn't somehow retain this attorney that he had found. What was the 28-day period? What's the beginning and end of that? If I may have a moment, Your Honor. That was from 27-day period. I'm sorry. It was from December 26th, where he made the first request for an attorney, and then January 21st, his attorney, an attorney entered an appearance on the case. So that's the period that we're really talking about, 27 days that are just before the trial. Counsel, if I could interject a question, don't the Supreme Court's precedence on right to counsel, say you only have the right to appointed counsel if you're indigent? Your Honor, I think in this case, because we have a petty offense, the defendant had a right to counsel of his own retention. Right, but he wouldn't have a right to appointed counsel in a petty offense, or indeed even in a felony. He wouldn't have a right to appointed counsel if he was not indigent. Yes, I'm not aware of a case that gives him that right, Your Honor. I'm also not aware of a case that takes it away. But I don't believe that the court has held that he has the right to appointed counsel if he is not indigent, and he had not shown that. In fact, the court had previously appointed a counsel for the defendant when he wasn't indigent, requiring him to make payment for that attorney, and so it had gone even further, and that led to the condition of probation that he pay that counsel because he never, that's why the counsel withdrew. He never paid what the court ordered him to pay for the counsel that was appointed for him. So we're talking about a 27-day period. Counsel referred to a witness dying. I'm not aware of any evidence in the record on that issue, Your Honor. I don't know when this witness supposedly died. I don't know if it was within this 27-day period. I don't think there's anything in the record on that. Was there any proffer as to what this witness allegedly would have said? In the defendant's opening brief, he proffered that the witness would have testified about supposedly giving an alibi for the defendant. But at the same time, the evidence that he supported or provided this court to support that was a declaration that he had tried to get into evidence under the hearsay rule the judge kept out that had nothing to do with that issue. It had to do with things that happened later. And beyond that, it was pure speculation because there was no evidence to support that. Is there something equivalent to a harmless error analysis that would apply in any event here because of the substantial amount of evidence regarding what happened to the Boyle Law Firm and what was found in the other computers and so on that was tied directly to the defendant? Absolutely, Your Honor. Yes. And I don't think that there was any basis for the court to find. There's no evidence before the record as to what this witness would have said even if he had been called and even if he had tried to call. Counsel, I thought that if he had indeed had a right to counsel that was violated, that that would be a structural error on which we couldn't apply harmless error. Your Honor, he was not – we're talking about a 27-day period that's before the trial started. So he wasn't denied the right of counsel at trial. He had trial counsel. He was actually represented by counsel either at his own – up until three months before counsel and then there was a period of time where the court gave him a chance to try to find counsel. That's reasonable. Courts do that all the time. People are unrepresentative while they're trying to find counsel. So really we're only talking about a very short period before trial where it's not a critical stage, where nothing happens. So your analysis really turns on the point that the Sixth Amendment right to counsel attaches only at the critical stage under Cronic, this Supreme Court case, right? Yes, Your Honor. And because you're arguing there is no – never reached the critical stage, you don't reach the structural analysis that Judge Gould has referred to. Yes, Your Honor. Okay. Yes, Your Honor. I just would like to make a couple of comments on a few of the issues. I don't want to go into them in depth. But first of all, there was never any doubt in the defendant's mind that he was being tried on a petty offense. The letter that is in the record, it's part of Clerk's Record 233, which is I think in the excerpt of record.  And then the court goes on to say, now that we've made this decision, we'd like to make you a plea offer. Would you like to accept it? There was also no doubt by the defendant that that's what the government did.    And in his motion for – I'm sorry, a motion for a jury trial on November 8th – sorry, November 7th, 2007, and that's Clerk's Record 182. And in that motion that the defendant filed, this is two months before the trial, he said, quote, on June 20th, 2007, the government stated that it would drop certain language from the information, thus making the charge a petty offense under 18 U.S.C. 2701b2. And then the court, when it ruled on that motion, said, quote, there is no dispute that the current and only charge constitutes a petty offense. So this was two months before the trial. And also at the trial, as we've cited in our brief, the defendant was informed again that the court was going to hold the government to it, this was going forward as a petty offense. The defendant said he did not object. So I think there's nothing to that issue. And then finally, on the first issue, Your Honor, whether he was denied his Sixth Amendment right to compulsory process, because the defendant didn't actually file a motion asking for this, he just said we would like to file a motion, it's unclear to us what the basis for this is. Is he asking for this, for example, under 17b, where you have to show that you're indigent, that you're 17b, you're asking the court to pay for it. 17a, all you have to do is go to the clerk's office and ask for subpoenas, and they'll give them to you. So it's unclear. He certainly didn't make any showing under 17b. And one additional case that we'd bring to the Court's attention on that is United States v. Sims, which is 637 Fed Second 625, a Ninth Circuit case from 1980. In that case, the Court said a trial court's refusal to issue a subpoena under 17b is clearly appropriate when the request is untimely, when the testimony sought is cumulative, when the defendant has failed to make a satisfactory showing as required by the rule, or when the requested subpoena would in some other way constitute an oppressive and unreasonable use of the process in the court. I think the Court made those findings. And the defendant didn't actually file a motion, so there's no basis for the Court to find that these conditions were satisfied. At that point, Your Honor, I would submit it unless the Court has questions about particular issues. Thank you. Thank you very much. We'll hear the rebuttal argument, please, then. Your Honor, we spent a lot of time on the right to counsel. We failed to really address this. It's a charade, really. This was not a petty offense. This was not properly charged. The Court proceeded based on what the – if you look at the September 11th, they're still asking for time to be excluded. You don't ask for time to be excluded on a petty offense. Yes, you do have a right to counsel, even if you're not indigent. There is case law on that. Please don't have me – But that was not Judge Gould's question. Judge Gould's question was a right to appointed counsel. Appointed, yes. You may be appointed to counsel, even if you're not indigent. It's in my brief. Please review my brief. I did raise a lot of issues because there were a lot of errors after the – No, I did – counsel, I did review your brief. I don't recall a case saying you have a right in your brief saying you have a right to appointed counsel when you're not indigent. Yes, there – And when you've retained successive counsel. Retained successive. He retained – he had three different lawyers. Please don't hold that against Mr. Vivier, Your Honor. There were – there were multiple attorneys. In many cases – Okay. We're not holding things against them. Why don't you try to answer the question I asked? Yes. Is there a case you cited, a specific case you cited, because you've just represented to us there is. I did, Your Honor. Please read my brief. Thank you, Your Honor. What's the case in your brief that you argue says there's a right to appointed counsel when you're not indigent? We'll take another look at your case. If you can identify it. Thank you, Your Honor. It's in – I'm misreading the case. What's the case? Arsinger. Arsinger v. Hamlin. And it's also Rule 44A. And I would look at – Did you say Argersinger? I did, Your Honor. I also said – That was a case with indigency. Indigency? Yeah. It wasn't indigency. That's an old case. That is an old case. I studied it in law school. That's how old that is. It came right after Marbury v. Madison. It was around that time. So what page in your brief do you have this – where do you think you have these cases? We'll take more look at it. Your Honor, I know there's a case, and I can't seem to find it in my brief. And if I – I know I edited my brief because I had so much – I did have a lot of words. I believe there is a case that says if you're unable – if you want to have counsel, you're unable to find a counsel, then the court may appoint a counsel. And – Judge Smith, could I just suggest this? Let's let counsel, if he can find that case, submit to the clerk of the court on our standard form the citation. And we'll be sure to take a look at it, and you can take whatever time you want after argument to find it, and if there is such a case. I think it's a very good suggestion. Consider it adopted, and we encourage you to do that. Your time is now up, and we will now submit the case of the United States v. Vivium. We thank counsel for their argument, and the court is recessed for the day. We note that there are some students here, and the members of the court will meet with you in just a few moments once we have a chance to get into our civilian clothes. And we're all set for the case. Thank you both. Thank you, Your Honor. Appreciate it. Thank you very much. All rise.
judges: Marbley, Gould, Smith M.